IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KAYLA R.,[1]

        Plaintiff,

v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

        Defendant.

No. 6:22-cv-00084-HZ

OPINION & ORDER

John E. Haapala , Jr.
401 E. Tenth Avenue
Suite 240
Eugene, OR 97401

    Attorney for Plaintiff

Renata Gowie
Assistant United States Attorney
District of Oregon
1000 SW Third Avenue, Suite 600
Portland, OR 97204

---

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this Opinion uses the same designation for a non-governmental party's immediate family member.

1 – OPINION & ORDER

Frederick D. Fripps
Social Security Administration
Office of the General Counsel
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104

    Attorneys for Defendant

HERNÁNDEZ, District Judge:

Plaintiff Kayla R. brings this action seeking judicial review of the Commissioner's final decision to deny disability insurance benefits ("DIB"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). The Court affirms the Commissioner's decision.

## PROCEDURAL BACKGROUND

Plaintiff applied for DIB on March 19, 2019, alleging an onset date of September 2, 2018. Tr. 189.[2] Plaintiff's date last insured ("DLI") is December 31, 2022. Her application was denied initially and on reconsideration. Tr. 65, 79. On January 27, 2021, Plaintiff amended her alleged onset date to March 19, 2019. Tr. 188.

On February 3, 2021, Plaintiff appeared with counsel for a hearing before an Administrative Law Judge ("ALJ"). Tr. 30-64. On April 7, 2021, the ALJ found Plaintiff not disabled. Tr. 13-24. The Appeals Council denied review. Tr. 1-6.

## FACTUAL BACKGROUND

Plaintiff alleges disability based on Sjogren's syndrome, fibromyalgia, and post-traumatic stress disorder ("PTSD"). Tr. 193. At the time of her alleged onset date, Plaintiff was 31 years old. Tr. 189. Plaintiff has a high-school education and past relevant work experience as a "manager (cashier II)" and "customer service representative (customer support specialist)."

---

[2] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record, filed herein as Docket No. 9.

2 – OPINION & ORDER

Tr. 23.

## SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if they are unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). Disability claims are evaluated according to a five-step procedure. *See Valentine v. Comm'r*, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, agency uses five-step procedure to determine disability). The claimant bears the ultimate burden of proving disability. *Id.*

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. § 404.1520(c). If not, the claimant is not disabled. *Id.*

In step three, the Commissioner determines whether the claimant's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. § 404.1520(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity (RFC) to perform their "past relevant work." 20 C.F.R. § 404.1520(e). If the claimant can perform past relevant work, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the

3 – OPINION & ORDER

Commissioner. In step five, the Commissioner must establish that the claimant can perform other work. *Yuckert*, 482 U.S. at 141–42; 20 C.F.R. § 404.1520(e)–(f). If the Commissioner meets the burden and proves that the claimant can perform other work that exists in the national economy, then the claimant is not disabled. 20 C.F.R. § 404.1566.

## THE ALJ'S DECISION

At step one, the ALJ found Plaintiff did not engage in substantial gainful activity after her March 19, 2019 amended alleged onset date. Tr. 15. Next, at steps two and three, the ALJ determined that Plaintiff has the following severe impairments: Sjogren's syndrome, fibromyalgia, a major depressive disorder, PTSD, and a traumatic brain injury ("TBI"). Tr. 15. However, the ALJ determined that Plaintiff's impairments did not meet or medically equal the severity of a listed impairment. Tr. 16. The ALJ concluded that Plaintiff has the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) with the following limitations:

> [S]he can lift, carry, push, or pull 20 pounds occasionally and 10 pounds frequently. She can sit, stand, or walk for six hours each in an eight-hour day. She can perform simple, routine tasks, and make only simple work-related decisions. She can occasionally interact with supervisors, coworkers, and the public. The claimant's time off task can be accommodated by normal breaks.

Tr. 18. At step four, the ALJ concluded that Plaintiff cannot perform her past relevant work. Tr. 23. At step five the ALJ found there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as cleaner, marker, and small products assembler. Tr. 24. Thus, the ALJ concluded that Plaintiff is not disabled. Tr. 24.

## STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings "are based on legal error or are not supported by substantial evidence

in the record as a whole." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). The court considers the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. *Id.*; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Vasquez*, 572 F.3d at 591 (internal quotation marks and brackets omitted); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's") (internal quotation marks omitted).

## DISCUSSION

Plaintiff contends the ALJ erred when he (1) found the opinion of William Trueblood, Ph.D., to be unpersuasive; (2) partially rejected Plaintiff's testimony; and (3) partially rejected the lay-witness statement of Plaintiff's mother, Doris P.

### I.  Medical Opinion Evidence

Plaintiff contends the ALJ erred when he found the Dr. Trueblood's January 6, 2021 Medical Source Statement to be unpersuasive.

New regulations about weighing medical opinion evidence apply to claims filed on or after March 27, 2017. Rules Regarding the Evaluation of Medical Evidence, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. § 404.1520c. Under the new regulations, ALJs are no longer required to give deference to any medical opinion, including treating source opinions. *Id.* Instead, the agency considers several factors. 20 C.F.R. § 404.1520c(a). These are:

supportability, consistency, relationship to the claimant, specialization, and "other factors." 20 C.F.R. § 404.1520c(c)(1)-(5). The "most important" factors in the evaluation process are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2).

Under this framework, the ALJ must "articulate . . . how persuasive [they] find all of the medical opinions" from each doctor or other source. 20 C.F.R. § 404.1520c(b). In doing so, the ALJ is required to explain how supportability and consistency were considered and may explain how the other factors were considered. 20 C.F.R § 404.1520c(b)(2). When two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same," the ALJ is required to explain how the other factors were considered. 20 C.F.R. § 404.1520c(b)(3). "Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

On November 5, 2020, Dr. Trueblood conducted a neuropsychological evaluation of Plaintiff during which he administered the following tests and procedures: Wechsler Adult Intelligence Scale-Fourth Edition, Wechsler Memory Scale-Fourth Edition, California Verbal Learning Test-Second Edition (CVLT-II), Word Memory Test, Trail Making Test, Controlled Oral Word Association Test (COWAT) - FAS version, Semantic fluency task (animal naming), Rey-Osterrieth Complex Figure (ROCF), Clock Drawing Test, Behavior Rating Inventory of Executive Function - Adult Version. Tr. 711. Dr. Trueblood concluded Plaintiff did not have any impairment in her visuospatial, semantic, or verbal skills and "possible mild impairment" in her working memory and processing speed. Tr. 710. Dr. Trueblood found Plaintiff had moderate impairment in "memory or retention of information after a delay" and in her executive skills. *Id.*

Specifically, Plaintiff has "significant dysexecutive syndrome particularly characterized by disinhibition, such as irritability, temper problems and outspokenness that may be mildly inappropriate (such as occurring in public settings)." Tr. 710. However, Dr. Trueblood noted his impression regarding dysexecutive syndrome was "tentative; it is based in part on Kayla's mother's report." *Id.* In his narrative report Dr. Trueblood explained Plaintiff's working memory "that is, her ability to hold information in mind and think with it, is likely in the average range and is rated as normal," her processing speed is in the average or slightly below average range and is "mildly impaired," her "learning and memory test results are . . . consistent with approximately moderate impairment . . . although possibly a rating of mild to moderate would be appropriate," and she has a "probable mild impairment in executive functioning." Tr. 713-15.

On January 6, 2021, Dr. Trueblood completed a medical source statement based on the neuropsychological evaluation he conducted in November 2020. Dr. Trueblood indicated Plaintiff's "performance or productivity" would be "precluded" for "30% of an 8-hour work day" in her ability to understand, remember, and carry out detailed instructions; "to maintain attention and concentration for extended periods (the approximately 2-hour segments between arrival and first break, lunch, second break, and departure)"; "to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods"; and "to set realistic goals or to make plans independently of others." Tr. 724-26. Dr. Trueblood stated Plaintiff's performance or productivity was precluded for "20% of an 8-hour work day" in all other areas except her ability to understand, remember, and carry out very short and simple instructions and to make simple, work-related decisions. Dr. Trueblood opined Plaintiff would be off task more than 30% of an eight-hour workday due to "substantial deficits in learning/memory and

executive skills [that] would very likely preclude [Plaintiff] from satisfactorily performing many types of tasks on almost any type of job." Tr. 727.

The ALJ found Dr. Trueblood's opinion to be unpersuasive on the basis that the degree of limitation outlined by Dr. Trueblood is not supported by his own examination findings "which showed only moderate impairment in learning, memory, and executive function, with possible mild impairment in processing speed and working memory." Tr. 22. The record supports the ALJ's reasoning. In his November 5, 2020 neuropsychological evaluation Dr. Trueblood did not find Plaintiff to be severely limited in any areas. As noted, Dr. Trueblood indicated Plaintiff does not have any impairment in her visuospatial, semantic, or verbal skills and "possible mild impairment" in her working memory and processing speed. Tr. 710. Dr. Trueblood found Plaintiff has a moderate impairment in "memory or retention of information after a delay" and tentatively found Plaintiff has a possible dysexecutive syndrome. *Id.* Dr. Trueblood explained Plaintiff's working memory "is likely in the average range and is rated as normal," her processing speed is in the average or slightly below average range and is "mildly impaired," her "learning and memory test results are . . . consistent with . . .moderate  impairment" or mild-to-moderate impairment, and she has a "probable mild impairment in executive functioning." Tr. 713-15. These findings from Dr. Trueblood's extensive testing do not support the severe limitations that Dr. Trueblood suggested in his January 2021 Medical Source Statement.

In addition, Plaintiff does not point to any opinion by a medical professional that supports the severity of limitations suggested by Dr. Trueblood in his January 2021 Medical Source Statement. In fact, on May 30, 2019, reviewing psychologist Scott Kaper, Ph.D., indicated Plaintiff has a only a mild limitation in her ability to concentrate, persist, or maintain pace.

Tr. 74. On May 5, 2020, reviewing psychologist Diane Kogut, Ph.D., reached the same conclusion. Tr. 89. On January 7, 2020, treating provider Mayra Dennis, FNP, performed the Montreal Cognitive Assessment and found Plaintiff scored "25/30," which indicates no or very mild cognitive impairment. Tr. 532. On December 28, 2020, treating physician Anthony Kahr, M.D., completed a Medical Assessment Form in which he indicated that Plaintiff suffers from fibromyalgia and Sjogren syndrome, but noted he was "unable to assess" Plaintiff's limitations. Tr. 718-23.

On this record the Court concludes the ALJ did not err when he found Dr. Trueblood's opinion to be unpersuasive because the ALJ provided clear and convincing reasons for doing so based on substantial evidence in the record.

II.     **Subjective Symptom Testimony**

Plaintiff alleges the ALJ erred when he partially rejected Plaintiff's testimony.

The ALJ is responsible for evaluating symptom testimony. SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). The ALJ engages in a two-step analysis for subjective symptom evaluation. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (superseded on other grounds). First, the ALJ determines whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (internal quotations omitted). Second, "if the claimant has presented such evidence, and there is no evidence of malingering, then the ALJ must give specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms." *Id.* (internal quotations omitted).

When evaluating subjective symptom testimony, "[g]eneral findings are insufficient." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (quoting *Lester v. Chater,* 81 F.3d 821, 834

9 – OPINION & ORDER

(9th Cir. 1995)). "An ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination." *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015). Instead, "the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195 (9th Cir. 2001); *see also Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discount the claimant's testimony.").

Plaintiff testified at the hearing that she stopped working in March 2019 because she felt that she could no longer perform her job duties and could not "show up at the times that they needed [her] to anymore" due to her symptoms of dryness, pain, and digestive issues, which Plaintiff found to be "completely overwhelming." Tr. 41. Plaintiff stated that her symptoms have escalated since she stopped working. Plaintiff has "a lot" of headaches, cognitive disfunction, brain fog, and memory loss. Tr. 41. Plaintiff has "constant memory loss" and fatigue every day. Tr. 41-42. Plaintiff testified the medications she takes for Sjogren's syndrome and fibromyalgia cause fatigue and malaise. Plaintiff stated she can stand for 45 to 60 minutes at one time. Tr. 44. She needs to lie down or to recline three or four times per day for 20 or 30 minutes at a time and she has "problems using her hands." Tr. 45. Specifically, she is "constantly dropping things . . . or not able to grasp" approximately "40 to 50 times a day." Tr. 45. Plaintiff has headaches "where [she] ha[s] to . . . remove [herself] . . . or go in a dark room . . . a few times a day." Tr. 45-46. Plaintiff has restless leg syndrome that keeps her from sleeping well "half of the week." Tr. 46. Plaintiff has trouble doing chores and prepares only microwave meals because of pain and fatigue. Plaintiff also has "a lot of anxiety" and does not "trust anybody." Tr. 48. Plaintiff

does not "have the ability to keep [her] mood consistent because of . . . irritability. . . . [When she] get[s] irritable or angry it's . . . not easy for [her] to get back out of it again. It's really hard for [her] to control." Tr. 48. Plaintiff does not always understand instructions and has trouble keeping track of things like appointments. Plaintiff does not "have the ability to concentrate long enough to get a project done" and can "only concentrate . . . five or ten minutes on a video game." Tr. 52.

The ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. 19. Specifically, the ALJ noted with respect to Plaintiff's mental-health impairments that Dr. Trueblood's neuropsychological evaluation indicated Plaintiff had mild-to-moderate impairments and did not support the intensity or severity of the mental impairments alleged by Plaintiff. The ALJ also noted at the hearing that in contrast to Plaintiff's testimony that she can concentrate for only five or ten minutes on a video game, Plaintiff told a medical provider in March 2020 that she "stays busy playing a game that she loves on her computer." Tr. 52, 642.

As to Plaintiff's physical impairments the ALJ found although Plaintiff has fibromyalgia, TBI, and Sjogren's syndrome, physical examinations reflected full visual fields, intact extraocular movements without nystagmus, equally round and reactive pupils, a symmetric face when activated, intact facial sensation, intact hearing, an elevated palate, full shoulder shrug, midline tongue protrusion, normal salivary pooling, with no synovitis, no swollen joints, no joint tenderness, full range of motion, normal bulk and tone with full strength throughout, absent Romberg, intact coordination, intact heel toe walking, and intact sensation, reflexes. In addition,

11 – OPINION & ORDER

although Plaintiff testified to severe and constant problems with grip, the record does not reflect any findings of inflammatory arthritis, neurosjogren's symptoms, synovitis, deformity or tophi, swollen joints, or joint tenderness.

The ALJ also relied on the opinions of reviewing physicians Peter Bernardo, M.D., and William Harrison, M.D., who found Plaintiff can frequently lift 10 pounds and occasionally lift 20 pounds and can stand, sit, and/or walk for six hours in an eight-hour workday. Tr. 78 ,90. The ALJ incorporated these physical limitations into his assessment of Plaintiff's RFC.

The Court concludes on this record that the ALJ did not err when he partially rejected Plaintiff's testimony regarding the intensity, persistence, and limiting effects of her symptoms because the ALJ provided specific, clear, and convincing reasons supported by substantial evidence in the record for doing so.

### III.    Lay Witness Testimony

Plaintiff alleges the ALJ erred when he partially rejected the lay-witness statement of Plaintiff's mother, Doris P.

"Lay testimony as to a claimant's symptoms is competent evidence that the Secretary must take into account." *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (citation omitted); 20 C.F.R. § 404.1529(c)(1) ("In evaluating the intensity and persistence of your symptoms, we consider all of the available evidence from your medical sources and nonmedical sources about how your symptoms affect you."). Under the 2017 regulations, the ALJ is not "required to articulate how [they] considered evidence from nonmedical sources" using the same criteria required for the evaluation of medical sources. 20 C.F.R. § 404.1520c(d). Under the new regulations, however, the ALJ must still articulate their assessment of lay witness statements. *Tanya L.L. v. Comm'r Soc. Sec.*, 526 F.Supp.3d 858, 869 (D. Or. 2021).

The ALJ must give reasons "germane to the witness" when discounting the testimony of lay witnesses. *Valentine,* 574 F.3d at 694. But the ALJ is not required "to discuss every witness's testimony on an individualized, witness-by-witness basis." *Molina*, 674 F.3d at 1114, *superseded on other grounds* by 20 C.F.R. § 404.1502(a). If the ALJ gives valid germane reasons for rejecting testimony from one witness, the ALJ may refer only to those reasons when rejecting similar testimony by a different witness. *Id.* Additionally, where "lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony," any error by the ALJ in failing to discuss the lay testimony is harmless. *Id*. at 1117, 1122.

On September 13, 2019, Doris P., completed a Third Party Adult Function Report in which she stated Plaintiff's fibromyalgia pain limits her ability to "move or do anything." Tr. 226. Plaintiff does not sleep well due to headaches and pain. Plaintiff makes herself "one course meals of healthy food" daily and does dishes, but it takes her at least one hour to cook and to clean up. Plaintiff shops for groceries once a week and it takes "anywhere from 1 to 3 hours." Tr. 229. Plaintiff has brain fog, irritability, and "extreme mood swings." Tr. 230. Plaintiff can walk 100 feet before needing to stop and rest and can pay attention for five-to-ten minutes at a time. Plaintiff can follow written instructions "somewhat," can follow spoken instructions "well," and gets along well with authority figures. Tr. 231. Doris P. also noted Plaintiff has "extreme panic attacks from her PTSD" and has weakness "just standing there visiting with" Doris P. Tr. 233.

The ALJ considered Doris P.'s statement, but "found [it] neither inherently valuable, nor persuasive when compared to the objective medical evidence." Tr. 22. Doris P.'s statement is substantially similar to Plaintiff's testimony. The Court has already concluded the ALJ did not

err when he partially rejected Plaintiff's testimony because the ALJ provided support for his opinion based on substantial evidence in the record. The Court also concludes on the same basis that the ALJ did not err when he partially rejected Doris P.'s statement.

## CONCLUSION

Based on the foregoing, the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

DATED: January 4, 2023

*Marco Hernández*
MARCO A. HERNÁNDEZ
United States District Judge

14 – OPINION & ORDER